<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VICTOR CUOCO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-6592 (JLL) |
| | : | |
| v. | : | |
| | : | OPINION |
| PALISADES COLLECTION, LLC, | : | |
| and PRESSLER & PRESSLER, LP, | : | |
| | : | |
| Defendants. | : | |

**I.     INTRODUCTION**

This matter comes before the Court on the motion of plaintiff Victor Cuoco's

("Plaintiff") parents, Victor and Betty Cuoco ("movants"), to substitute themselves as plaintiffs

pursuant to Federal Rule of Civil Procedure 25. <u>See</u> ECF No. 15-1. For the reasons herein, the

motion to substitute is granted.

**II.     BACKGROUND**

Plaintiff filed this action on July 31, 2013 in the United States District Court for the

Southern District of New York. <u>See</u> Compl., ECF No. 1; Defendants' Palisades Collection, LLC

and Pressler & Pressler, LLP, Joint Opposition to Plaintiff's Motion to Substitute Plaintiff

Pursuant to Federal Rule of Civil Procedure 25 ("Def. Opp. Br.") at 1, ECF No. 20-2. The

Complaint names Palisades Collection, LLC ("Palisades") and Pressler & Pressler, LP

("Pressler") (collectively "Defendants") as Defendants. <u>See</u> Compl., ECF No. 1. Plaintiff seeks

both compensatory and punitive damages relating to violations of the FDCPA, negligence and recklessness, and invasion of privacy. See Compl., ECF No. 1 ¶¶ 1, 60, 68. Palisades filed an answer with affirmative defenses denying all liability on September 12, 2013. Def. Opp. Br., ECF No. 20 at 2. Pressler similarly filed an answer with affirmative defenses on September 13, 2013, denying all allegations. Id.

Plaintiff asserts that Palisades purchases "portfolios of allegedly defaulted debt," and seeks to collect the debt for profit. Compl., ECF No. 1 ¶ 12. Plaintiff further asserts that in the course of its business, Palisades purchased a portfolio of Verizon debt allegedly owed by Plaintiff.  Id. ¶ 13. Thereafter, Palisades secured the services of Pressler to assist in collecting the debt allegedly owed. Id. ¶ 14. Plaintiff contends that in or around 2007, Pressler brought a lawsuit against him on behalf of Palisades to recover the debt allegedly owed for his Verizon phone bill, namely $901.07. Id. ¶ 17. A default judgment was issued against the Plaintiff and was entered on January 24, 2008.  Id. ¶ 19. Plaintiff contends that Defendants have repeatedly relied on harassing tactics to collect the debt. Id. ¶ 1. The alleged tactics used by the Defendants against the Plaintiff include threats of arrest, attempts to levy on the real property of Plaintiff's parents and on Plaintiff's personal bank account, threats of garnishment, and adding additional sums to the alleged debt. Id. Despite his claim that he did not owe the money, Plaintiff claims to have paid the debt.  Id. ¶ 23. Defendants contend, however, that Plaintiff never provided or disclosed documentation suggesting that he paid the debt that was allegedly owed. See Def. Opp. Br. at 4, ECF No. 20.

Moreover, Plaintiff contends that even after settling the debt, Defendants continued to engage in a pattern of harassing collection tactics to recover more money.  Compl., ECF No. 1 ¶¶ 24-30. On February 14, 2013, Pressler, acting on behalf of Palisades, sent Plaintiff an

"information subpoena demanding information and threatening . . . that if he does not respond to the subpoena he could be arrested." Id. ¶ 31. This notice stated that Plaintiff owed $1,300.84. Id. ¶ 33. Plaintiff contends that this money was not owed, and that the notice contains illegal interest and fees. Id. ¶¶ 34-37. On February 20, 2013, Defendants allegedly called the Plaintiff and, threatening arrest, demanded payment of the debt. Id. ¶ 40.

Plaintiff claims that Defendants' harassing tactics caused him to experience numerous health issues, including heart failure and anxiety. Id. ¶ 74. On September 27, 2013, Plaintiff died. See Memorandum of Law in Support of Motion to Substitute Plaintiff Pursuant to Federal Rule of Civil Procedure 25 ("Pl. Br."), ECF No. 15-1 at 1. On October 21, 2013, the parties agreed to a Consent Order to transfer venue from the Southern District of New York to the District of New Jersey. Id. On October 23, 2013, Plaintiff's attorney filed a suggestion of death on the record. Joseph Mauro Aff., ECF No. 8 ¶ 3. The next day, counsel for Pressler "transmitted correspondence to the assigned trial judge, The Honorable Laura Taylor Swain with reference to transfer of the instant action to the District Court of New Jersey." Def. Opp. Br., ECF No. 20 at 2. On October 31, 2013, The United States District Court for the District Of New Jersey received a Certified Copy of the Transfer Order. Id.

Movants, Plaintiff's parents, seek, under Rule 25, to substitute themselves as plaintiffs to continue the litigation. Id. Paul Mauro, Esq. entered an appearance for movants in order to substitute them as plaintiffs. Id. at 3. On December 27, 2013, movants, through their counsel Paul Mauro, moved to substitute under Rule 25. See Pl. Br., ECF No. 15. In support of their motion to substitute, both movants submitted affidavits confirming they are the Plaintiff's parents, that Plaintiff had no will, that he was not married and had no children, and that he resided with them. Affidavit in Support of Motion to Substitute Plaintiff ("Betty Cuoco Aff."),

ECF. No. 15-2 ¶¶ 1-5; Affidavit in Support of Motion to Substitute Plaintiff ("Victor Cuoco

Aff."), ECF No. 15-3 ¶¶ 1-5. Both Mr. and Mrs. Cuoco also state they are their son's next of kin

and that they will be "the ultimate distributees of any assets obtained from the lawsuit." Id. ¶ 6.

Defendants filed a joint opposition brief on January 7, 2014. See Def. Opp. Br., ECF No.

20. Defendants contend that Plaintiff's FDCPA claim extinguished upon his death, the motion

was not timely, and movants are improper substitutes under Rule 25. See id. Movants filed a

Memorandum of Law in Reply to Defendants' Opposition to Motion to Substitute Plaintiff

Pursuant to Federal Rule of Civil Procedure 25 ("Reply Br.") on January 28, 2014. ECF No. 29.

On January 12, 2014, Betty and Victor Cuoco filed another suggestion of death on the record

through their attorney, Paul Mauro, Esq. See Suggestion of Death of Plaintiff, ECF No. 28. Soon

thereafter, on February 4, 2014, the movants submitted documentation from the State of New

Jersey Monmouth County Surrogate's Court appointing movant, Betty Cuoco, as administrator

of the estate of her son, who died intestate. See ECF No. 30.

## III.   DISCUSSION

Rule 25 states, in pertinent part, that:

> If a party dies and the claim is not extinguished, the court may order
> substitution of the proper party. A motion for substitution may be
> made by any party or by the decedent's successor or representative.
> If the motion is not made within 90 days after service of a statement
> noting the death, the action by or against the decedent must be
> dismissed.

A court considering a Rule 25 motion must address three questions: " whether (1) the motion is

timely; (2) the claims pled are extinguished; and (3) the person being substituted is a proper

party." Veliz v. Cintas Corp., No. 03-1180, 2008 WL 2811171, at *1 (N.D. Cal. July 17, 2008).

The decision of whether to grant the motion for substitution is within the discretion of the trial

court. McKenna v. Pac. Rail Serv., 32 F.3d 820, 836 (3d Cir. 1994) (citing Fed. R. Civ. P. 25(a)).

While the trial court does have the discretion to deny the motion, such a denial, without cause, is rare. See Saylor v. Bastedo, 623 F.2d 230, 237 (2d Cir. 1980) (noting that "it is difficult to imagine a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within the rule's time limits"); see also In re Baycol Prods. Litig., 616 F.3d 778, 783 (8th Cir. 2010) (explaining that the "Advisory Committee on the 1963 amendments to [Rule] 25 intended that motions to substitute be freely granted").

The Court will first consider whether Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claims and state law claims for negligence and recklessness and invasion of privacy are extinguished. Second, the Court will address whether movants' motion is timely. Finally, the Court will consider whether the movants are proper parties for substitution.  For the reasons stated herein, the Court concludes that Plaintiff's claims are not extinguished, that the motion is timely, and that Plaintiff's parents are proper parties for substitution. Therefore, the motion for substitution is granted.

## A.  Plaintiff's FDCPA claims and state law claims for negligence and recklessness and invasion of privacy are not extinguished.

The threshold inquiry when analyzing a motion to substitute is whether the underlying claim is extinguished. Giles v. Campbell, 698 F.3d 153, 155-56 (3d Cir. 2012). Rule 25 "does not resolve the question [of] what law of survival of actions should be applied. . . . [It] simply describes the *manner* in which parties are to be substituted in federal court once it is determined that the applicable substantive law allows the action to survive a party's death." Robertson v. Wegmann, 436 U.S. 584, 587 (1978) (emphasis added).

## 1.  Plaintiff's FDCPA claims are not extinguished.

The Fair Debt Collection Practices Act ("FDCPA") seeks to eradicate abusive debt practices. The FDCPA was passed as a result of Congressional concern that "[a]busive debt

collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(a)). The FDCPA provides "consumers with a private cause of action against debt collectors who fail to comply with the Act." Id. (citing 15 U.S.C. § 1692(k)). The FDCPA is a remedial statute; therefore, courts will "construe its language broadly so as to effect its purpose." Id.

As to the survivorship of federal claims, courts have concluded, when analyzing a variety of federal statutes, that a plaintiff's claim can survive his or her death even without a specific provision in the statute indicating that the claim survives the party's death. See Acebal v. United States, 60 Fed. Cl. 551, 555 (Fed. Cl. 2004) ("That actions at law could survive the death of a party absent a specific saving provision has long been the rule and was contemplated by the First Congress"); see also Cox v. Roth, 348 U.S. 207, 210 (1955) (finding that a Jones Act claim survives the death of a party); Sinito v. U.S. Dep't of Justice, 176 F.3d 512, 513 (D.C. Cir. 1999) (interpreting the Freedom of Information Act and finding that just because there is no "specific clause in the statute providing that the action should survive the death of the original party does not necessarily mean that Congress intended the action to abate upon the party's death."). As the court in Sinito explained, "whether a cause of action based on a federal statute survives the death of the plaintiff is a question of federal law." Id. Thus, the "court's role is to 'formulate a federal rule of decision that best serves the goals which underlie the federal right of action itself,' and thereby 'effectuate the will of Congress as best [we] can.'" Id. (quoting Mallick v. Int'l Bhd. of Elec. Workers, 814 F.2d 674, 677 (D.C. Cir. 1987)). When, as with the FDCPA, no specific statutory provision addresses survivorship of the claim, "courts have looked to federal common

law to determine whether an action created by federal statute survives the death of a party."

Acebal, 60 Fed. Cl. at 555 (internal citations omitted).

The test for survivorship hinges on whether the statutory provision is primarily penal in nature or remedial in nature. See Bracken v. Harris & Zide, L.L.P., 219 F.R.D. 481, 483 (N.D. Cal. 2004). Statutory provisions that are penal in nature extinguish at the party's death, whereas statutes that are remedial in nature survive the party's death. Acebal, 60 Fed. Cl. at 555 ("Actions in the nature of a penalty . . . abate on death. A cause of action for debt, on the other hand, survives the death of the plaintiff."). In Bracken, the court explained the rationale for this rule, namely that "penalties do not survive for the reason that a decedent is beyond punishment . . . [whereas] actions to recompense or compensate a plaintiff for a harm inflicted upon him by a decedent do survive." Id. at 483 (quoting Derdiarian v. Futterman Corp., 223 F. Supp. 265, 269 (S.D.N.Y. 1963)). Courts apply a three-factor test to determine if actions are penal or remedial in nature: "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." Id. at 484 (quoting United States v. Edwards, 667 F. Supp. 1204, 1212 (W.D. Tenn. 1987)). Applying this test in the context of the FDCPA, courts have held that the statute is primarily remedial in nature. See id. at 483. Therefore, claims under the FDCPA survive the death of a party.  Id.; cf. Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013) (explaining that the FDCPA is remedial in nature and should be construed broadly to effect its purpose).

While Bracken is distinguishable from the instant case in that it was the defendant being substituted instead of the plaintiff, other cases have allowed substitution of a deceased plaintiff in

cases involving the FDCPA. For example, in <u>Cruz v. Int'l Collection Corp.</u>, the plaintiff died

after initiating a FDCPA claim against the defendant. 673 F.3d 991, 996 (9th Cir. 2012). After

receiving notice of her death, the defense moved to dismiss the action. <u>Id</u>. Nevertheless, the

district court allowed the original plaintiff's son to be substituted as the plaintiff in the action. <u>Id.</u>

The Ninth Circuit, on appeal, did not directly address the issue of substitution because there was

not timely notice of appeal filed within the appropriate time frame. <u>Id.</u> at 1001 ("If there has been

no timely notice of appeal from an order, a circuit court of appeal has no jurisdiction to review

that order."). However, the district court's approval of the substitution of plaintiff's son indicates

that a claim under the FDCPA does not extinguish at an FDCPA plaintiff's death. Moreover, trial

courts in other districts have specifically held that FDCPA claims survive a plaintiff's death. For

example, in <u>Jewett v. Bishop, White Marshall & Weibel</u>, the Plaintiff filed a complaint alleging

violation of the FDCPA, among other claims. Civ. No. 12-10142 (C.D. Cal. Feb. 25, 2013).

During the course of the litigation, the original plaintiff, Jodie Jewett, passed away. <u>Id</u>. Jewett's

attorney filed a motion to substitute Ms. Jewett's husband pursuant to Federal Rule of Civil

Procedure 25(a). <u>Id</u>. Defendant opposed the proposed substitution, but the court held that Ms.

Jewett's claims were not extinguished, including her FDCPA claim. <u>Id.</u> Similarly, in <u>Mason v.</u>

<u>Asset Acceptance, LLC</u>, the court, in considering a motion to substitute in an FDCPA case,

allowed the original plaintiff's sister to substitute for her following her death. <u>Mason v. Asset</u>

<u>Acceptance, LLC</u>, No. 06-735, 2007 U.S. Dist. LEXIS 57162, at *3-6 (S.D. Ohio July 9, 2007).

Like the plaintiffs in <u>Cruz</u>, <u>Jewett</u>, and <u>Mason</u>, who died during the course of the

litigation and were substituted pursuant to Rule 25, here too Plaintiff died after filing a claim

under the FDCPA. Defendants are correct that under certain provisions of the FDCPA, "a

plaintiff must be a 'consumer' as defined in the FDCPA to have a cause of action because those

sections define violations in terms of conduct directed toward a 'consumer.'" Christy v. EOS

CCA, 905 F. Supp. 2d 648, 652 (E.D. Pa. 2012). The FDCPA defines consumer as "any natural

person obligated or allegedly obligated to pay any debt." 15 U.S.C.A. § 1692(a). However,

Defendants have made no indication that Plaintiff himself lacked standing to bring the claim

under the FDCPA, and therefore their contention that Plaintiff's parents lack standing is without

merit since a substituted party simply "steps into the same position of the original party."

Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir. 1971). The Defendants have conflated two

distinct inquiries. Indeed, Defendants are correct that in order to *initiate* an action, the original

Plaintiff may need to be a "consumer" as defined by the statute. But, so long as the original

plaintiff is a "consumer," the standing requirement is satisfied. See id. (explaining that once

subject matter jurisdiction "validly exists among the original parties, [it] remains intact after

substitution"). In Cruz, Jewett, and Mason, the substituted plaintiffs were not "consumers" under

the FDCPA; rather, they were standing in for the original plaintiff, who was a "consumer,"

following that consumer's death. Thus, the Court concludes that Plaintiff's FDCPA claim is not

extinguished.

## 2. Plaintiff's state law claims are also not extinguished.

In addition to the claims under the FDCPA, Plaintiff also brings two state law causes of

action for: (1) negligence and recklessness, and (2) invasion of privacy. Similar to the analysis

under the FDCPA, whether Plaintiff's state law claims survive is a substantive question that

requires the court to look at the underlying survivorship law, in this case New Jersey state law.

See Giles, 698 F.3d at 156. New Jersey's survival statute provides, in pertinent part, that

"[e]xecutors and administrators may have an action for any trespass done to the person or

property, real or personal, of their testator or intestate against the trespasser, and recover their

damages as their testator or intestate would have had if he was living." N.J. Stat. Ann. § 2A:15-3 (2013). As one New Jersey court explained, the survival statute abrogated the common law rule that "[a]ll tort actions abated . . . upon the death of a party." Weller v. Home News Pub. Co., 112 N.J. Super. 502, 506 (Ch. Div. 1970). In Weller, the court stated that the "term 'trespass' in the statute is equated with 'tort'" and that the term encompasses "invasion of the right of privacy" actions in which damages for emotional distress are sought. Id.; see also Canino v. New York News, Inc., 96 N.J. 189, 194-95 (1984). Courts have extended this broad interpretation of the survival statute to many different causes of action. See MacDonald v. Time, Inc., 554 F. Supp. 1053, 1054 (D.N.J. 1983) (noting that negligence claims survive the death of a party); Hawes v. Johnson & Johnson, 940 F. Supp. 697, 701 (D.N.J. 1996) (claims under New Jersey Law Against Discrimination survive death); Weller, 112 N.J. Super. at 507 (finding libel and invasion of privacy claims survive a plaintiff's death).

In MacDonald, the court was confronted with the issue of whether the New Jersey survival statute saved defamation actions. MacDonald, 554 F. Supp. at 1055. The court rejected the proposition "that torts involving pecuniary damages or special damages survive under the statute, while those involving only injury to reputation and feelings do not," and instead held that the claim survived because the court in Weller "placed New Jersey in the modern trend toward survival of *all* tort actions" Id. at 1055 (emphasis added). Here, the Court concludes that both of Plaintiff's state claims survive his claim.

## B.  Plaintiff's motion for substitution is timely.

Rule 25 provides that a motion to substitute must be filed "within 90 days after service of a statement noting the death[]." However, two affirmative steps must be taken to "trigger the running of the 90 day period." Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994). The party

seeking to substitute must: (1) "formally suggest the death of the party upon the record," and (2) "serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." Id.

Defendants contend that the motion is untimely because the suggestion of death dated October 23, 2013 (ECF No. 8) is invalid and more than 90 days have passed since Plaintiff's death on September 27, 2013. Def. Opp. Br., ECF No. 20-2 at 11. Specifically, Defendants argue the suggestion of death is invalid because: (1) it was filed by Mr. Joseph Mauro, the deceased Plaintiff's attorney; (2) movants failed to serve themselves pursuant to Rule 4; and (3) the suggestion of death failed to "identify the representative of the successor who may be substituted as a party." Id. The Court concludes, however, that the motion was timely because the original suggestion of death (ECF No. 8) was not defective as it did not result in a situation in which a party was impermissibly burdened with locating the opposing party's successors, nor did it raise jurisdictional issues. Moreover, even if the original suggestion of death was defective, it simply means that that 90-day period did not begin to run. Finally, movants filed a new suggestion of death on the record on January 12, 2014, effectively curing any original defect and beginning the 90-day period.

## 1.  The original suggestion of death filed by Joseph Mauro was not defective.

Defendant's contention that the attorney may not file a valid suggestion of death is a misapplication of the rule that a *defendant's* attorney may not file a suggestion of death in a nefarious manner to impose an unreasonable burden on a plaintiff. Courts have sought to prevent Rule 25 from being "used as a weapon by civil defense attorneys to 'place on plaintiff the burden, where no conventional representative was appointed for the estate in probate court, of instituting machinery in order to produce some representative of the estate ad litem, pending

11

appointment of the representative contemplated by law of the domicile of the deceased.'"

Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470 (2d Cir. 1998) (quoting Rende v. Kay, 415

F.2d 983, 986 (D.C. Cir. 1969)).

In Al–Jundi v. Estate of Rockefeller, the court considered a case in which the plaintiff

sought to substitute a deceased defendant whose attorney filed a suggestion of death on the

record. 757 F.Supp. 206, 210 (W.D.N.Y.1990). The court stated that "[a] firm and conscionable

rule that is distilled from the judicial decisions is that, *when it is a defendant who has died* and it

is his heirs or distributees who wish to put an end to litigation which does not abate because of

death, the various facets of rule 25(a)(1) must be satisfied." Id. (emphasis added). The court

explained that once a defendant dies, "every iota of authorization [the attorney has] to act for or

in [the client's] behalf" extinguishes. Id. When it is a defendant who dies, courts have held that

strict compliance with Rule 25 is required so as to avoid imposing an unreasonable burden on the

plaintiff.

Similarly, in Bass v. Attardi, defendant's counsel filed a suggestion of death for two

defendants who died during the course of the litigation, Carr and Schmidt. Bass v. Attardi, 868

F.2d 45, 50 n.12 (3d Cir. 1989). Defendant's counsel, purporting to provide ongoing

representation to Carr after his death, claimed "that the district court erred in failing to dismiss

the complaint against Carr because Carr died and [plaintiff] Bass failed to substitute Carr's

representative or successor." Id. The court rejected this position and held that the attorney-client

relationship ended at defendant's death. Id.  The court went on to explain that "the suggestion of

death in the cases of both Carr and Schmidt was deficient because the suggestion was not served

on the decedents' successors or representatives as required by [Rule 25]." Id. The court expressed

12

concern that if defendant's attorney could file the suggestion of death, it would effectively shift the burden to the plaintiff "to locate the decedent's successor or representative in 90 days." Id.

Thus, courts have prevented defense attorneys from being able to file valid suggestions of death for their deceased clients and have required that defendants seeking to dispose of an action comply with the requirements of Rule 25. Here, these concerns are inapplicable because it was Plaintiff's attorney, Joseph Mauro, who filed the suggestion of death on the record and because here the movants are seeking to substitute as plaintiffs for their deceased son. This is not a case in which a deceased defendant's attorney is seeking to terminate the litigation by filing a suggestion of death on the record and naming no representatives or successors, creating an unreasonable burden for the plaintiff. Therefore, the concern of impermissible burden shifting is inapplicable in this case. Id. Because there is no such concern surrounding a plaintiff's attorney filing the suggestion of death, the Court concludes that the initial suggestion of death filed by Plaintiff's attorney, Mr. Mauro, was not defective.

**2.   There are no jurisdictional concerns preventing movants' substitution.**

Courts have emphasized the abrogation of the attorney-client relationship at death for jurisdictional reasons. In Giles, the plaintiff, a prison inmate, brought suit against certain correctional officers, including Officer Campbell. Giles, 698 F.3d at 154. During the course of the litigation, Campbell died. Id. at 155. Giles moved, under Rule 25, to substitute the administratrix of Campbell's estate as defendant. Id. However, "[n]either the suggestion of death nor the motion to substitute was served on the estate." Id. Giles argued that even though he did not serve Campbell's estate, the motion was properly served because "it was served upon 'Campbell's counsel.'" Id. at 158. The court held that Giles's argument was foreclosed by Bass, namely because the attorney-client relationship extinguished at death and because the suggestion

13

of death was deficient because it was "not served on the decedents' successors or representatives" Id. (quoting Bass, 868 F.2d at 50 n.12). The court held that the parties were required under Rule 25 to "serve Campbell's estate pursuant to Rule 4." Id. As the court explained, the rationale for this rule is "jurisdictionally rooted" in that the representative of the estate must be served under Rule 4 to establish personal jurisdiction. Id. (quoting Ransom, 437 F.2d at 516-17).

The jurisdictional concerns articulated in Giles are inapplicable to the facts of this case. In Giles, the court's concern stemmed from a plaintiff seeking to substitute a defendant improperly served, which raised a jurisdictional issue; here, by contrast, the movants are seeking to affirmatively enter the litigation, which fails to raise the same concerns. Giles, 698 F.3d at 158. As one court noted, "[p]ersonal service under Rule 4 serves two purposes: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit." Oklahoma Radio Associates v. F.D.I.C., 969 F.2d 940, 943 (10th Cir. 1992). Thus, in light of the purposes of Rule 4, there is little utility in requiring a party seeking to substitute to serve themselves as they already have notice and they are trying to substitute themselves rather than a third-party defendant. Defendant's position is an overly formalistic interpretation of Rule 25. See McKenna, 32 F.3d at 835 (explaining that "the district court's denial on the basis that the plaintiff did not make a formal motion, filed and served in accordance with Rule 25, also was, in our view, an overly strict interpretation of the rule"). Thus, the original suggestion of death filed by Plaintiff's attorney, Joseph Mauro, Esq. is not defective because there are no concerns regarding impermissible burden shifting or jurisdictional hurdles.

14

**3.  Even if the original suggestion of death was defective, all it would mean is that the 90-day period did not begin to run**

The 90-day clock does not run from the actual date of death; rather, it begins after a valid suggestion of death is filed. See Hawes, 940 F. Supp. at 699 (quoting Blair v. Beech Aircraft Corp., 104 F.R.D. 21, 22 (W.D. Pa. 1984)) (explaining that the 90-day time period under Rule 25 "begins only after a party's death is 'formally suggested on the record by the filing and service of a written statement of the fact of death as provided in Rule 5 of the Federal Rules of Civil Procedure and Form 30'").  Thus, even if the suggestion of death filed on the record by Mr. Mauro was defective, it is not fatal to the instant motion because the result is that the 90-day period did not begin to run. Defendant's argument that the 90-day period had expired because the October 23, 2013 "Suggestion of Death" was filed more than 90 days after Plaintiff's death is incorrect as a matter of law. As the court in Unicorn Tales, Inc. v. Banerjee explained:

> Prior to 1963, Rule 25(a)(1) "result[ed] in an inflexible requirement that an action be dismissed as to a deceased party if substitution [was] not carried out within a fixed period measured from the time of the death." The present version of the rule, on the other hand, establishes a time limit starting from the time "information of the death is provided by means of a suggestion of death upon the record."

138 F.3d 467, 469 (2d Cir. 1998) (internal citations omitted). Thus, the 1963 amendments to Rule 25 make clear that the 90-day clock does not begin to run at the party's death; rather, it begins to run after a valid suggestion of death is made.

Relatedly, Rule 25 contains no affirmative requirement that a suggestion of death even be filed. Rule 25 allows "a motion to substitute [to be] made before a valid suggestion of death has been made." Hardy v. Kaszycki & Sons Contractors, Inc., 842 F. Supp. 713, 716 (S.D.N.Y. 1993). Thus, a valid suggestion of death was not a necessary precursor to the instant motion, and the lack of such filing should not, therefore, hinder the motion. McKenna, 32 F.3d at 836. In

addition, Defendants' rigid application of Rule 25 is out of touch with precedent in this circuit. In McKenna, the Third Circuit was confronted with a situation in which the plaintiff passed away after the lawsuit was commenced and "Plaintiffs' counsel never filed a 'suggestion of death' or served formal written notice of the death on defense counsel or the court." 32 F.3d at 835. The district court struck the deceased plaintiff from the case, but the Third Circuit overruled, explaining that "[n]othing in Rule 25 says that a suggestion of death must be made or sets forth a time frame for doing it." Id. at 836. Further, the court explained that the "district court's denial on the basis that the plaintiff did not make a formal motion, filed and served in accordance with Rule 25 . . . was . . . an overly strict interpretation of the rule. We have indicated a willingness to permit lesser attempts to suffice." Id. The Third Circuit concluded, therefore, that the 90-day time period had not begun to run because death was never suggested on the record. Id. Moreover, the court found little prejudice because defendant was in fact aware of plaintiff's death soon after plaintiff's counsel became aware of it. Id. Therefore, because neither a formal motion nor a suggestion of death must be filed, the Court concludes that Defendant's position is contrary to the goals of Rule 25 and binding authority. As a result, the Court finds that the motion is timely.

**4. Movants filed a second suggestion of death, effectively curing any defect.**

Putting aside the question of whether the first Suggestion of Death was invalid, Plaintiff's parents filed a second Suggestion of Death themselves on January 12, 2014, correcting any original defect and effectively starting the 90-day period.  See Suggestion of Death of Plaintiff, ECF No. 28. Thus, regardless of whether the original suggestion of death was deficient, this defect has been corrected.

### C.  Movants are proper parties for substitution.

"Rule 25 only permits the substitution of 'proper parties.'" Graham v. Henderson, 224

F.R.D. 59, 63 (N.D.N.Y. 2004). The Eighth Circuit, synthesizing the case law, explained that "a

person may be a 'successor' under Rule 25(a)(1) if she is (1) the primary beneficiary of an

already distributed estate . . . (2) named in a will as the executor of the decedent's estate, even if

the will is not probated . . . or (3) the primary beneficiary of an unprobated intestate estate which

need not be probated." In re Baycol Products Litig., 616 F.3d at 784-85; see also Ashley v.

Illinois Cent. Gulf R. Co., 98 F.R.D. 722, 724 (S.D. Miss. 1983) (citing Rende, 415 F.2d 983)

(explaining  that "[u]nless the estate of a deceased party has been distributed at the time of the

making of the motion for substitution, the 'proper' party for substitution would be either the

executor or administrator of the estate of the deceased. 'Successors' would be the distributees of

the decedent's estate if his estate had been closed").

Thus, Defendants' contention that movants' status as "ultimate distributes (sic) of the

Plaintiff's assets is meaningless until the Surogate (sic) Court determines that they are

appropriate surviving heirs of the Plaintiff's estate" is without merit. Def. Opp. Br., ECF No. 20

at 8. In Hardy, one of the parties died and it was undisputed that his wife was the sole or primary

"distributee of her husband's estate," even though she "had not been formally named as the

representative of her husband's estate."  842 F. Supp. at 716-17. The court concluded that since

she was, at a minimum, the primary distributee, she could be considered the "representative of

her husband's estate" and was a "proper party to be substituted." Id. The court reasoned that "[t]o

require the plaintiffs to petition the Surrogate's Court to appoint a representative, and thereafter

renew their motion to substitute, is precisely the type of rigidity that contravenes the purposes of

amended Rule 25(a)(1)." Id. at 717 n.3. Similarly, in Mason, plaintiff died during the course of

the litigation and her sister moved to be substituted. 2007 U.S. Dist. LEXIS 57162, at *2. The movant-sister attached an affidavit explaining that the plaintiff "died intestate without a spouse or children, that [she] left no assets, and that [her sister] is the closest living heir." Id. The court granted the substitution and stated that it saw "no value in requiring [the movant-sister] to go through the process of being formally appointed [plaintiff's] executor for the sole purpose of achieving what at best amounts to mere technical compliance with Rule 25." Id. at 6.

This case is indistinguishable from Mason. Just like the plaintiff in Mason, Plaintiff died intestate leaving the movants as the sole distributees of his estate. There is no requirement that the movants be formally appointed as executors or administrators of the estate before they may substitute under Rule 25. See id.; see also Hardy, 842 F. Supp. at 716-17. Moreover, since the parties' initial filings, the Monmouth County Surrogate Court named movant, Betty Cuoco, administratrix of her son's estate "for the sole purpose of allowing Betty Cuoco to represent the decedent in a pending litigation." See Letters of Administration, Docket No. 236689, ECF No. 30. Thus, there is no question that movants are proper parties for substitution under Rule 25.

## IV.    CONCLUSION

For the reasons set forth above, movants' motion to substitute is granted. An appropriate form of Order will issue.

/s Michael A. Hammer
**United States Magistrate Judge**

Dated: March 11, 2014